## ROUSS v. BRISCOE. (No. 6217.)

(Court of Civil Appeals of Texas. San Antonio. May 14, 1919. Rehearing Denied June 11, 1919.)

CONTRACTS ⇐=189—CONSTRUCTION—AGREEMENT TO ASSUME DEBTS—MATTERS INCLUDED—TORTS.

Where a debtor executed a bill of sale to his creditor, who thereupon agreed to assume and settle all debts, the debtor is not entitled to reimbursement from such creditor of a sum paid by the debtor as damages for fraud; payment of damages for his torts not being contemplated by the agreement.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by E. E. Briscoe against P. W. Rouss. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

S. A. Early, of Corpus Christi, for appellant.

Anderson & Smith, of Corpus Christi, for appellee.

MOURSUND, J. This is a suit for alleged breach of contract because of the refusal of appellant to reimburse appellee for the amount he paid in satisfaction of a certain judgment recovered by W. G. Bain and J. N. Vanzant against him in the district court of Williamson county, Tex., on the 26th day of November, 1915.

Appellee was formerly a merchant at Granger, Williamson county, Tex., and appellant is a wholesale merchant in the city of New York.

Appellee had been buying goods from appellant for a number of years, and had become indebted to him in a large sum of money. In January, 1914, appellee sold his business at Granger to one J. A. Fagg, and as part consideration for the sale a note for $750 was made, dated January 9, 1914, payable to E. E. Briscoe, appellee, one year from its date, and signed by J. A. Fagg, J. F. Maedgen, E. B. Hurst, W. H. Neely, S. T. Brinkley, W. G. Bain, and J. N. Vanzant.

On or about January 17, 1914, appellee indorsed and transferred said note to appellant in consideration of the crediting of the amount thereof upon his indebtedness to appellant.

On January 8, 1915, appellee was still indebted to appellant in a large sum of money, and was also indebted to various other mercantile creditors in large sums, and in order to effect a settlement of his business, a bill of sale was made by appellee, conveying his stock of merchandise to appellant. The bill of sale was made to F. A. Tucker, agent for appellant, and therein appellee recited the consideration as follows: "For and in consideration of the sum of fifty-five hundred dollars cash, paid to my creditors and for my benefit by F. A. Tucker." At the same time a "receipt and release" was executed by appellant, through Tucker, which reads as follows:

"The State of Texas, County of Nueces. Supplementary to and as a further consideration for a certain bill of sale of even date herewith, wherein E. E. Briscoe, of Nueces county, Texas, conveyed to F. A. Tucker, for my benefit, a certain stock of goods, wares and merchandise, I, P. W. Rouss, doing business under the name of Charles Broadway Rouss, of New York City, in the state of New York, hereby assume and agree to settle all debts against the said E. E. Briscoe, except that due on his homestead, the balance due on his cash register, any debts he may owe relatives or friends, and a note of $1,000.00 due the City National Bank of Corpus Christi. On the last-named debt I am to pay two hundred and fifty ($250.00) dollars, and no more. I also agree and acknowledge that the said E. E. Briscoe retains all accounts due him, both at Corpus Christi and Granger, Texas, one cash register, one iron safe, one roll top desk and chair, two electric ceiling fans out of the store this day conveyed to the said F. A. Tucker, and certain store fixtures at Granger, Texas. I also hereby fully release the said E. E. Briscoe from further liability to me on any and all obligations I hold against him.

"Executed in duplicate and signed by my authorized agent, F. A. Tucker, this 8th day of January, 1915. P. W. Rouss, by F. A. Tucker, Agent."

When the $750 note matured, it was not paid, and appellant brought suit on it in the district court of Williamson county against all of the makers or signers and against appellee, as indorser.

All of the defendants in that suit answered, except J. F. Maedgen, against whom judgment by default was rendered.

Between the date on which said note was executed and the date of the trial of the case, J. A. Fagg had become a bankrupt, and he pleaded his discharge in bankruptcy.

Appellee answered in said suit, admitting the execution, sale, and delivery of said note to appellant, but pleaded his release from liability on his indorsement by reason of the contract made between himself and appellant on the 8th day of January, 1915, which is the same contract sued on in this case.

The defendants S. T. Brinkley, E. B. Hurst, and W. H. Neely answered in said

suit in the district court of Williamson county, and alleged that when they signed the note sued on it was payable to W. G. Bain or order, and that after they had signed it, and without their knowledge or consent, it was altered and changed in a material respect, and that the name of the payee, "W. G. Bain," had been erased and the name "E. E. Briscoe" had been inserted as the payee, and that said note was an altered and forged instrument, and prayed that they be discharged with their costs.

The defendants W. G. Bain and J. N. Vanzant adopted the answer of their codefendants, Brinkley, Hurst, and Neely, and alleged further that J. A. Fagg and E. E. Briscoe, appellee, entered into a conspiracy to defraud them, and altered or procured the alteration of the note sued on, and represented to them that S. T. Brinkley, E. B. Hurst, and W. H. Neely had signed the note, and that it was a binding obligation as to them, and thereby through said fraud and misrepresentation procured their signatures to the note, and prayed that, in the event plaintiff, appellant, should recover judgment for any amount against them, they have judgment over against the said J. A. Fagg and E. E. Briscoe, appellee, for a like amount.

The court rendered its judgment in that case that plaintiff, appellant, take nothing by his suit against the defendants S. T. Brinkley, E. B. Hurst, W. H. Neely, and E. E. Briscoe, appellee, and that plaintiff recover against the defendants, J. A. Fagg, J. F. Maedgen, W. G. Bain, and J. N. Vanzant the sum of $979.69, with interest and costs, and that the defendants W. G. Bain and J. N. Vanzant recover over against their codefendants, J. A. Fagg and E. E. Briscoe, the said sum of $979.69, with interest and costs.

Bain and Vanzant paid off the judgment recovered by the plaintiff against them, and sued out a writ of execution in their own favor on their judgment against J. A. Fagg and E. E. Briscoe.

Appellee satisfied the execution by paying $1,045.27, and then instituted this suit for the amount thus paid by him, seeking to recover the same, with interest, from appellant upon the "receipt and release" agreement hereinbefore copied. While an accounting was prayed for, the suit, under the evidence adduced, was simply one for the recovery of said sum of money with interest. The court rendered judgment for $1,220.60, presumably the sum prayed for with interest.

In making the foregoing statement, we have availed ourselves to a large extent of appellant's statement of the nature and result of the suit.

Appellant contends that in order for appellee to recover the sum he paid in satisfaction of the judgment in favor of Bain and Vanzant he must show that the judgment was for a bona fide debt he owed Bain and Vanzant at the time the contract was entered into, and that appellant had notice of it. He further contends that the contract related only to appellee's legitimate mercantile debts, such debts as he himself was under contract to pay, and the existence of which he had disclosed to appellant. Appellee submits the following counter proposition:

"The word all 'debts' as used in the contract and release is a word of large import, including not only debts of record, judgments, and debts by specialty, but also obligations arising on an implied contract, and in its popular sense includes all that is due to a man in any form of obligation, of which appellant had notice."

Appellee testified that he sold the $750 note to appellant, and received therefor a credit of $750 on the sum he owed appellant. This occurred in January, 1914. He became liable to appellant as an indorser of the note. This liability was released in January, 1915, by the terms of the "receipt and release" executed by appellant, and appellee testified that his obligation as indorser was specifically mentioned at the time of the settlement. His testimony is as follows:

"In making this settlement with Mr. Rouss he took in consideration this note, in this way: Mr. Tucker offered it as an inducement to get me to sell to them at these considerations. The wording of the release also said this trade will release me from any liability on the note. I told Mr. Tucker, 'The note is good; one man on the note is worth $25,000;' and he said, 'That will release you from it;' that was more than once spoken of by the agent, Mr. Tucker."

He does not testify, however, that he informed appellant's agent or appellant that there was a liability on his part to two of the signers of the note, Bain and Vanzant, existing by virtue of a fraud practiced on them by him, and that appellant would be expected to assume such obligation to said signers of the note. Nor did he tell either of them that the signatures of three other signers had been obtained in such a manner that they could not be held liable on the note. On the contrary, he told Tucker that the note was good, and that one man on it was worth $25,000.

It was definitely adjudicated in the suit by appellant on the note that Brinkley, Hurst, and Neely were not liable on the note, and that appellee had practiced a fraud on Bain and Vanzant to procure their signatures, by reason whereof they had suffered damages in the sum of the judgment obtained against them by appellant. The sum which appellee recovered in this suit, therefore, was paid by him as damages for a tort perpetrated by him upon Bain and Vanzant, and if he is permitted to recover the same from appellant, he will not only have secured the credit of $750, but will have made appellant repay him all the proceeds derived by appellant from the collection of the note. Thus appellee would lose nothing by his fraud, while

appellant would be made to pay for it. The result is so contrary to right and justice that a construction of a contract so as to legalize it should not be adopted if the contract is subject to any other reasonable construction. We have no doubt that the parties never contemplated that appellant should pay all damages recoverable against appellee for torts committed by him. Both parties in their propositions assume that the contract covered debts of which appellant had notice. If that be a correct test, appellee cannot recover in this case, for appellant had no notice of his fraud. The note did not mature until one day after the execution of the contract sued on, and suit was not filed thereon until in June, 1918. The recital in the bill of sale indicates that the debts to be paid by appellant amounted to $5,500, and appellee testified he made it in consideration of the payment of $5,500 to his creditors, and that appellant would release him from all liability due and owing to him. This shows that debts of which notice was given were contemplated by the parties. When both instruments are considered in connection with the facts leading up to their execution, and the description of the debts excepted, it is obvious that the word, "debts," was used to denote sums of money arising upon contracts, express or implied, growing out of the mercantile business conducted by appellee. Certainly it was never intended to import a sum which might thereafter be established by a court to be due as damages for a tort committed by appellee in the past.

We conclude that appellee is not entitled to recover in this case. The judgment is reversed, and judgment rendered for appellant.